So is it Mr. Kinseth, Kyenseth, how do you pronounce your name? Kinseth, Your Honor. So Mr. Kinseth, you have reserved two minutes for rebuttal, so that gives you eight to begin. You may proceed. Thank you very much, Your Honor. May it please the Court. My name is Stephen Kinseth and I represent the Appellants Magwo and HK International Funds USA Limited LLC, which I'm going to refer to as HKUSA. The Court should reverse the Bankruptcy Court's grant of summary judgment against the appellants, which resulted in the immediate seizure and sale of the Lady May, which was HKUSA's yacht. Can I interrupt you just for a second? Because it's just not clear to me why there was appellate jurisdiction here. I mean, there's only a couple of ways to get up into this Court, one of which obviously is that there's a final judgment, but there's no final judgment in the District Court, right? Actually, the District Court's judgment is final. And the authority is 28 U.S. I thought there was existing claims that are still pending. Those claims are effectively moot. If I could explain, the District Court entered a final judgment as to the first and second counterclaims, and the District Court specifically stated that the Bankruptcy Court had even effectively granted all relief that the trustee had sought. And so the third and fourth and fifth counterclaims were effectively moot. They're in the alternative. I mean, they haven't been dismissed or withdrawn or anything, right? Correct, but that would only require a ministerial task. I think, Your Honor, most telling, the District Court entered judgment, did not remand, and directed the clerk to close the case. And so for all intents and purposes, there is a final judgment as to the Lady May and the 37. Well, directed the clerk to close the appeal in the District Court. I think that the adversary. Directed to close the bankruptcy case. Not the case. This arose in a separate adversary proceeding, and again, for all practical purposes, all the relief that was sought by the trustee has been granted. If this Court affirms, there's no need for a remand. There's no need. I mean, perhaps there would be a remand for the ministerial task of formally dismissing the remaining three counterclaims, and I'm sure the trustees' counsel confirm my perspective on this thing, and my perspective is that. Well, the District Court took the appeal based on an offensive rule that allows it to basically take interlocutory appeals. Correct. It wasn't a final judgment, and it's not clear to me how that changed at any point. You're arguing that we should be peering behind the fact that there are still open claims to say, well, it's effectively done, but we don't seem to take such a casual view of jurisdiction as maybe the Ninth or other circuits do. There is authority for the proposition that an interlocutory decision by a bankruptcy court can become a final decision by the District Court, which entitles the Court of Appeals to hear the appeal under 28 U.S.C. D-1. D-2 is in the alternative, the certification process. In the event that the District Court enters an interlocutory decision, you can go through a certification process. In Ray Fugazia, that's a 1992 case, it says the District Court's own decision of an appeal from the bankruptcy court is not a final decision for purposes of appeal to the Court of Appeals unless the order of the bankruptcy court was itself final. Correct. And then in 2005, Congress changed 28 U.S.C. 152 D-1, basically added D-1 and D-2 to create an alternative arrangement where a final judgment from the District Court can be appealed to the Court of Appeals. But it can be. I mean, what do you mean it can be? Well, meaning that the – Of course it can be, right? Yeah, you can get certification. Or alternatively, certification is under D-2. Under D-1, if the District Court enters a final judgment, then the appeal will stand. The appellate court has – the Court of Appeals has jurisdiction to consider the appeal. I would also direct the Court to the decision in Reed-Anderson, which comes out of the Seventh Circuit. It's 917 Federal 3rd 566-570, which is a 2019 decision, which specifically refers to the fact that under the current statutory structure, an interlocutory decision from the Bankruptcy Court can be made final by the District Court by not requiring – entering a decision such that there's no further work to be done. And that's precisely what happened here. But that's not what the District Court said. Actually, what the District Court said was for all practical – and I'm nearly quoting – for all practical purposes, the trustee obtained all the relief to which the trustee was entitled. And therefore, I respectfully submit that the District Court's decision was final. I'd also submit that the Bankruptcy Court's decision – our position was, in the alternative to the District Court, the Bankruptcy Court's decision was final because, again, the allegations of the remaining counts were in the alternative – alternative ways to secure the Lady May, liquidate the Lady May, alternative ways to take the $37 million that had been pledged to secure the return of the Lady May. And so for all practical purposes, the appeal was final. I'd also point to the fact that – I believe that's in the brief. When we briefed the jurisdiction issue, we briefed and cited to the cases that talked about bankruptcy jurisdiction being, because of the nature of bankruptcy, more flexible and requiring an examination of the particular context in which the decision is entered and whether or not there was a complete adjudication of that particular controversy. But the trustee opposed the dismissal of the other counterclaims, right? Originally, because of the pendency of the interpleader action, the trustee opposed the certification under 54B, and the – and the Bankruptcy Court actually declined to enter such a 54B determination. That interpleader action has since been resolved. So with respect to that nuance, you know, creating an open issue, that open issue has been closed by the Bankruptcy Court granting summary judgment. And by resolved, I meant it was resolved at the Bankruptcy Court level. And so that issue as to finality has been resolved with respect to the Bankruptcy Court's decision. If I could, with respect to the first counterclaim, very briefly, the first counterclaim was erroneously – sorry, the Bankruptcy Court erroneously granted summary judgment as to the first counterclaim based on collateral estoppel, because as briefed, the issue presented of sole ownership was not necessarily decided by the New York State Court. Additionally, the appellants were not in privity with Mr. Kwok in that contempt proceeding. Mr. Kwok did not represent his interests and – represent their interests, and the appellants did not control the proceeding. Given that you're out of time, why don't you address the alter ego issue? Because if we affirm on that, we don't need to decide collateral estoppel, correct? Yes, that's correct. With respect to the alter ego decision, the Bankruptcy Court erred in granting summary judgment because the Bankruptcy Court, in numerous instances, drew negative inferences against the appellants to support the conclusions reached. The Manikean decision of the Delaware Chancery Court sets forth the applicable standard for reverse veil piercing, outsider reverse veil piercing. In briefly summarizing – Was there a dispute as to some of the facts that the debtor used and controlled the boat? He paid for it. Hong Kong, USA, was a shell company, no operations, no employees, never filed a tax return, no bank accounts. The daughter had no knowledge that Hong Kong, USA, even held title to Lady Two. I mean, is there a dispute as to any of those facts? Yes, there's a dispute as to all of them because of the inference. While I understand that it – Did the debtor pay for the operations of the boat? That is disputed. The Golden Spring is the brother's company, and the brother – there's evidence in the record that the brother gifted the Lady May to May Guo. There's no evidence in the record that Mr. Kwok paid for the Lady May or paid through Golden Spring. What's really important is the Golden Spring default judgment determination occurred after summary judgment, and so it was inappropriately relied upon by the trustee in papers to this Court because it doesn't have collateral estoppel effect regardless because it was a default judgment, but more significantly occurred after summary judgment in this case. And to address more specifically your point, so no income, no employees, no business purpose. All of that is indicative of a single-purpose entity holding a personal asset for personal purposes. And so the Bankruptcy Court had to draw the adverse inference to the – against the nonmovements that somehow that's indicia of an illegitimate purpose. The Bankruptcy Court was required to draw reasonable inferences in favor of the nonmovement, and the reasonable inference under these circumstances, or a reasonable inference because it's just one that needs to be drawn in favor of the nonmovement, is that this was a legitimate structure for holding a pleasure job. And other factors such as undercapitalization, well, Golden Spring was funding the operations of and maintenance of Lady May, and so not having employees would be indicative of that structure, not a fraudulent purpose. And so over and over, the Bankruptcy Court, as the trier effect would, if there was a bench trial, would draw in one party's favor or another. But at the summary judgment stage, the Bankruptcy Court was required to draw reasonable inferences in favor of the nonmovement. Another example is the legitimate expectations of the owner and of the creditor. The owner held title to the Lady May. The creditor loaned $37 million pursuant to a stipulation that the Bankruptcy Court so ordered. The stipulation, in essence, provided that the $37 million would be released upon the Lady May being returned to Connecticut. The Lady May was returned to Connecticut. The legitimate expectations of the owner and the creditor were clearly that the $37 million would be returned to HKUSA. The Bankruptcy Court even acknowledged that as much, in a colloquy between myself in the court, which is in the brief, where the Bankruptcy Court said the bankruptcy estate should not recover both. If the Lady May is returned, the $37 million will be released. And yet the same court subsequently held it was not a legitimate expectation to expect that the $37 million would be returned. Those are just some of the examples. The brief set forth the many examples in which the Bankruptcy Court repeatedly drew negative inferences against the appellants. And for that reason, summary judgment should be reversed by this court as to the second counterclaim. Thank you.  You've reserved two minutes for rebuttal. So we'll now hear from Mr. Bassett. May it please the Court, Nick Bassett from Paul Hastings on behalf of Appelli, the Chapter 11 trustee. Your Honors, I do think a little bit of context is helpful for this case. This case arises out of, of course, the bankruptcy case of Ho-Wan Kwok, a now-imprisoned, self-proclaimed billionaire who filed for bankruptcy in February 2022, claiming to have essentially no money or assets to his name to satisfy creditors' claims. He accomplished this goal by having his assets transferred held in shell companies owned by his, nominally owned by his friends or his relatives. In this case, appellant HKUSA was nominally owned by his daughter and was used to hold title to Mr. Kwok's $30 million yacht, the Lady May. Can you just explain to me why there's appellate jurisdiction here? So, Your Honor, I will be candid, and I think the Court knows from the papers, we did not contest appellate jurisdiction before the District Court. There are two remaining causes of action. But before the District Court, the District Court had jurisdiction, no question. The District Court had jurisdiction. The question is whether the appellate court has jurisdiction when there's been a partial grant of summary judgment and there are counterclaims still pending in the bankruptcy claim. And I was referring to the appeal, the intermediate appeal to the District Court. Right. Your Honor. The District Court has the ability to take an interlocutory appeal the way it did. The question is whether the loser in that proceeding gets to appeal straight to the Court of Appeals. And it seems to me our case law says you don't get to do that. As counsel for appellants pointed out, the two remaining causes of action, so there are four causes of action at issue in the trustee's counterclaims and litigation. The first cause of action, which was the subject of the bankruptcy court's first summary judgment order, the first cause of action was for the trustee's beneficial ownership, the estate's beneficial ownership of the Lady Mae yacht. The second counterclaim was a counterclaim that HKUSA, the owner of the Lady Mae, and other assets was the debtor's alter ego. The third counterclaim, which has not been decided and remains, is a claim that HKUSA is beneficially owned by the estate. That is a claim that was pursued in the alternative to the alter ego finding. So it is not a claim that is currently being pressed because the trustee already has a final judgment from the court that HKUSA. You oppose dismissing those claims in the bankruptcy court, right? The basis for opposing dismissing those claims is to the extent that these claims would be reversed, that the first two decisions would be reversed on appeal. Then those claims would remain live as alternative claims. That's not a final judgment then. So you want to keep them open in case things go badly for you, but otherwise you're saying that it is effectively a final judgment. I just don't think you get to do that. It seems to me our case law doesn't let you do that. Ninth Circuit might let you do that, but we've disavowed the Ninth Circuit. This is a partial summary judgment grant, right? As the appellee, Your Honor, the trustee would have obviously no issue if the court were to decide that it lacks jurisdiction to consider the appeal. It just seems to me that when that's the case, then you've got to try to get to the court of appeals through 1292. And you can do that. You can ask the district court to certify it for an appeal, but nobody did that, right? That's correct, Your Honor. Respectfully, I think that's an issue for the appellant. Are you contesting appellant jurisdiction now? Appellant meaning our jurisdiction now? We did not contest that in our briefing to the court, Your Honor. So you heard appellant's explanation of why they think we have jurisdiction. What do you think of the other side's arguments? How do you respond? Do you take issue with the arguments? My view generally, Your Honor, is that, again, the trustee is no longer prosecuting its two remaining causes of action in the bankruptcy court. So are you going to dismiss them? You could do that. We could do that, Your Honor. I think this is a unique situation where as long as we were to be able to refile them without prejudice to the extent that the— So you want an interlocutor appeal without having to do the stuff you need to do to get an interlocutor appeal. You want to preserve everybody's right to do that. So it's state court now. Your Honor, again, we did not contest jurisdiction. It doesn't matter whether you contest it, of course. We have an independent obligation to determine whether we have appellant jurisdiction. So, I mean, the fact that you guys would love to just sort of skip the intermediate steps and come to the court of appeals is all well and good, but that's not how it works, right? Again, Your Honor, all I can say is we're not the appellant here. Well, I understand that, but, I mean, either you could dismiss your counterclaims, which you're saying are effectively unnecessary if you get affirmed, but you want to keep open in case you don't get affirmed, which means it's not final, not essentially final, not practically final, none of those things. That is the whole point of an interlocutory appeal rule. It doesn't let you do that, right? Well, I think the point of an interlocutory appeal rule is that you're not supposed to, that there's not automatic appellate jurisdiction for non-final orders, at least on, that don't resolve all of the issues in the litigation. I do think that the status quo, based on the orders entered by the bankruptcy court and affirmed by the district court, that the trustee has obtained all the relief that he needs in the adversary proceeding again. So then you should voluntarily dismiss your claims, it seems to me. But the case law is pretty clear that if you're not willing to do that, then there's no final judgment. I mean, the district court acknowledges there's no final judgment. And we have no issue. The trustee is willing to dismiss the claims. The remaining two counterclaims, the trustee hereby dismisses them? Yes. Okay. If I may respond to a couple of other points. I had planned to address, and obviously will only do so to the extent that the court has interest in it, but I planned to address the issue of the trustee's standing to pursue the reverse Dale piercing counterclaim. Our view, as set out in the papers, is that issue has been decided and resolved by this court in the NRA Nordlicht case in 2024, which is consistent with a long line of cases over the past 40 years in this circuit and others, including Tronics, including St. Paul. Every time the court has had occasion to consider whether an alter ego or a reverse Dale piercing or a traditional Dale piercing claim is property of the estate that the trustee has the exclusive ability to pursue, it is so that it is. The other side argues that there are disputed factual issues as to who is paying for the operation of the bow, who paid for the purchase of it. Is that true? Do you agree? Are those disputed facts? I do not. I do not agree, Your Honor. And, of course, the standard under Rule 56, and in particular Rule 56E, is that there has to be no genuine dispute of material fact. And the non-movement cannot defeat summary judgment by simply submitting a self-serving affidavit and conclusorily denying the allegations of the complaint. And to the extent that the appellants contend that there are disputed issues of fact, those are based solely on an affidavit that the appellant had submitted in the New York litigation that she resubmitted as part of the record below in this litigation. And that affidavit is not sufficient to overcome the voluminous evidence that supports summary judgment for the trustee. There are self-serving statements in that affidavit that the appellant was the one who directed, for example, the movement of the yacht. All of that testimony was contradicted by the testimony of three witnesses who testified in the New York litigation. Their testimony is also part of the summary judgment record below. It's the two former captains of the yacht, an individual with the yacht management company. They all testified that they took direction from the debtor, and they in fact testified that they never took direction directly from Ms. Glow as to the movement of the yacht. Appellant's counsel mentioned the testimony of Meg Glow that her brother had gifted her the yacht. She disavowed that same testimony under oath in front of the New York court. That testimony is also before the court below. In fact, in her deposition below before the bankruptcy court, Meg Glow affirmed the testimony of the yacht captains and others in the New York court. So the overall record, which includes all of that testimony, plus the undisputed facts of the HKUSA shared office space with the debtor, the debtor's personal counsel, Meg Glow's address on the LLC agreement was the debtor's apartment in New York. Meg Glow did not even know that the Lady May II was owned by HKUSA until the trustee found out about that and told her about it. In the New York litigation, she testified under oath that she thought her brother owned the Lady May II. The veil-piercing factors of failure to observe corporate formalities, those were met in abundance. There was no capitalization. HKUSA had no ability to fund the Lady May. It had no bank account. It had never filed tax returns. It had no employees. It had no directors. The record below was overwhelmingly supportive of summary judgment, and that's why the issue of whether or not collateral estoppel was applied is just not relevant, as the court had already observed in the colloquy with my colleague. So for all of those reasons, we think that the decision by the bankruptcy court below was correct, that its decisions should be affirmed. Thank you. I just want to be clear. You are agreeing to, the trustee is agreeing to dismiss its remaining counterclaims with prejudice. You don't get to refile. It's done. Yes. All right. Thank you. All right. We'll hear in a few minutes a rebuttal. Yes, very briefly. As I'm sure Your Honors perceived, when there's countervailing evidence which needed to be weighed and credibility needed to be assessed, that's for a trier of fact. It's not for summary judgment. There are many disputed issues of material fact, and, moreover, the only reason why the bankruptcy court reached the decision, reached with There was a hearing and there was testimony in the state court proceedings, and the state court made findings, right? Correct. To what extent are those findings controlling in the bankruptcy case or relevant, admissible in the bankruptcy proceeding? So only to the extent that collateral estoppel applies. And one of the great challenges here is that Judge Ostrager in the New York contempt proceeding, the particular final contempt proceeding in which my clients admittedly participated, was one small subset of the entire litigation, and yet the final decision finding Mr. Kwok in contempt incorporated many factual issues that had already been addressed in prior proceedings. And so in assessing the appropriateness, the fairness of applying collateral estoppel, that's a very significant factor as well. So I would submit that collateral estoppel has to apply, and I would also point out that collateral estoppel should not apply because, again, Mr. Kwok did not represent the interests of the appellants, and the appellants did not control the litigation. And the best point about the representation of the interest is the fact that Mr. Kwok chose to protect his personal liberty interest and not be put in criminal jeopardy by taking the Fifth, not responding to discovery, not testifying. That showed his interest that he was representing. He wasn't representing the interests of the appellants with respect to their ownership interests in the Lady May. Thank you. All right. Thank you both. We will reserve decision.